**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>    **Plaintiff,**<br><br>v.<br><br>**CONNIE EDWARDS (01),**<br><br>    **Defendant.** | **Case No. 12-20015-01-DDC** |

## MEMORANDUM AND ORDER

This matter comes before the court on pro se[1] prisoner Connie Edwards's Motion for Compassionate Release (Doc. 470). Ms. Edwards seeks compassionate release because of the COVID-19 pandemic. *Id.* at 1. The government has filed a Response (Doc. 475) and the Federal Public Defender's Office has filed a Reply for Ms. Edwards (Doc. 481). For reasons explained below, the court denies Ms. Edwards's motion.

### I.    Background

In October 2012, a grand jury returned a 23-count Third Superseding Indictment against Ms. Edwards and others. Doc. 159. Count 1 charged Ms. Edwards with conspiring to distribute and possession with intent to distribute oxycodone, hydrocodone, methadone, morphine, and methamphetamine, with death and serious bodily injury resulting from the use of the substances. *Id.* at 2. This charge, if proved beyond a reasonable doubt, would violate 21 U.S.C.

---

[1]    Ms. Edwards filed her Motion pro se. But, she is represented by counsel in this case, and her counsel filed the Reply. The court construes the pro se filing liberally and holds it to a less stringent standard than formal pleadings drafted by lawyers. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But the court does not assume the role of advocate for a pro se litigant. *Id.* And, the court does not apply that pro se standard to the professionally prepared Reply.

§§ 841(a)(1), 841(b)(1)(C), 846, and 18 U.S.C. § 2.  *Id.*  In November 2012, Ms. Edwards entered a plea agreement with the government.  Docs. 206 & 207.  She pleaded guilty to Count 1 of the Third Superseding Indictment.  Doc. 207 at 1–2.  The Presentence Investigation Report ("PSR") calculated a total offense level of 43—the highest offense level recognized by the Sentencing Guidelines—and a criminal history category of I, producing a Guidelines sentence of life imprisonment.  Doc. 253 at 24 (PSR ¶ 122).  In March 2013, the court sentenced Ms. Edwards to 300 months' imprisonment followed by five years of supervised release.  Doc. 267 at 2–3 (Judgment).

Ms. Edwards asserts she currently is incarcerated at Carswell Federal Medical Center.  Doc. 470 at 1.  She reports that she suffers from numerous chronic health problems—cancer, chronic kidney disease, chronic obstructive pulmonary disease (COPD), obesity, and Type 2 diabetes mellitus—among others.  *Id.* at 2–4; Doc. 481 at 3.  Indeed, the government has supplied more than 400 pages of records documenting Ms. Edwards's medical history.  Doc. 478 (sealed medical records).  Ms. Edwards asserts her health conditions place her at serious risk should she contract COVID-19.  Doc. 470 at 5–6.  Ms. Edwards's current facility has about a 40% positivity rate for COVID-19, according to the government's Response.  Doc. 475 at 7.  She also contends she has served almost eight years of her 25 year sentence.  Doc. 481 at 17 n.44.

**II.     Legal Standard**

Binding authority from our Circuit establishes that "'[a] district court is authorized to modify a [d]efendant's sentence only in specified instances where Congress has expressly granted the court jurisdiction to do so.'"  *United States v. White*, 765 F.3d 1240, 1244 (10th Cir. 2014) (quoting *United States v. Blackwell*, 81 F.3d 945, 947 (10th Cir. 1996)).  Title 18 U.S.C. § 3582(c)—commonly called the compassionate release statute—permits a court to modify a

term of imprisonment but only if certain exceptions apply. For many years, these exceptions only permitted the Bureau of Prisons ("BOP") to bring a motion under the compassionate release statute. But in 2018, the First Step Act modified the compassionate release statute and authorized a defendant to file her own motion for relief. First Step Act of 2018, Pub. L. No. 115-391, § A 603(b)(1), 132 Stat. 5194, 5239 (2018). This amendment authorized an inmate to make such a motion, but only after she "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on [her] behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ." 18 U.S.C. § 3582(c)(1)(A).

Ms. Edwards asserts that she asked her warden for compassionate release on April 8, 2020. Doc. 470 at 6. The government asserts that BOP records show that the warden denied her request on May 26, 2020. Doc. 475 at 4; *see also* Doc. 481-1 (warden's denial of compassionate release request). The government never explicitly discloses its position whether Ms. Edwards has exhausted her administrative remedies. *See* Doc. 475 at 3–4. Instead, the government's brief addresses the merits of Ms. Edwards's motion. *Id.* at 5–10. Since the government never raises a failure-to-exhaust defense, the government appears to concede that Ms. Edwards has exhausted her administrative remedies.

In *United States v. Alam*, 960 F.3d 831 (6th Cir. 2020), the Sixth Circuit treated § 3582(c)(1)(A)'s exhaustion requirement as a claim-processing rule, not a jurisdictional bar. *Id.* at 832–34. Although claim-processing rules don't implicate the court's subject matter jurisdiction, the court must enforce them when properly invoked. *Id.* at 833. But, if not invoked, claim-processing rules are subject to waiver and forfeiture. *Id.* at 834; *see also United States v. Spaulding*, 802 F.3d 1110, 1130–34 (10th Cir. 2015) (Gorsuch, J., dissenting) (explaining why

"§ 3582(c) doesn't strip the district court of any of its preexisting post-judgment jurisdiction and is instead and again a claim-processing rule").

The Tenth Circuit hasn't decided yet whether § 3582(c)(1)(A)'s exhaustion requirement is jurisdictional. So, the court must predict how our Circuit would decide the question. The court finds the Sixth Circuit's decision highly persuasive and the court predicts the Tenth Circuit would adopt its reasoning. Consistent with *Alam*, the court treats § 3582(c)(1)(A)'s exhaustion requirement as a claim-processing rule.

Because Ms. Edwards waited more than 30 days after requesting compassionate release to file a motion in federal court, she has satisfied the exhaustion requirement of § 3582(c)(1)(A). And, even if she hasn't, the government has waived any objections to the exhaustion requirement by not reserving it. So, the court now turns to the substance of Ms. Edwards's motion.

### III. Discussion

#### A. The court exercises its discretion when deciding whether "extraordinary and compelling reasons" exist.

Section 3582(c)(1)(A) authorizes district courts to reduce a term of imprisonment if, "after considering the factors set forth in Section 3553(a) to the extent that they are applicable," the court finds that (i) "extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

The Sentencing Commission's applicable policy statement is found in U.S.S.G. § 1B1.13. *United States v. Beck*, 425 F. Supp. 3d 573, 578 (M.D.N.C. 2019). As pertinent here, this policy statement provides that the court may reduce a term of imprisonment, after considering the § 3553(a) factors, if (1) "[e]xtraordinary and compelling reasons warrant the reduction," (2)

"[t]he defendant is not a danger to the safety of any other person or the community," and (3) "[t]he reduction is consistent with this policy statement." U.S.S.G. § 1B1.13.

Application Note 1 to § 1B1.13 provides that extraordinary and compelling reasons exist "under any of the [four] circumstances set forth below" in (A) through (D). *Id.* § 1B1.13 application notes 1. Subdivision (A) of Note 1 provides that the medical condition of a prisoner may qualify her for compassionate release, if (i) she is suffering from a terminal illness, or (ii) she is suffering from a serious physical or medical condition that "substantially diminishes" her ability to provide self-care within the prison and she is not expected to recover. *Id.* § 1B1.13 application notes 1(A). Subdivision (B) applies where "[t]he defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of . . . her term of imprisonment, whichever is less." *Id.* § 1B1.13 application notes 1(B). Subdivision (C) applies to family circumstances not invoked here. Subdivision (D) supplies a catchall provision: it applies when "[a]s determined by the Director of the [BOP], there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* § 1B1.13 application notes 1(D).

Ms. Edwards plainly does not qualify under two of the four subdivisions in Note 1. Although she is over 65 years old and suffering a deterioration in health, she has not served the lesser of 10 years or 75% of her sentence (Subdivision (B)). And nothing suggests that the "family circumstances" addressed in Subdivision (C) apply. She also does not qualify under either of the two prongs described in Subdivision (A). Although Ms. Edwards has a number of chronic health conditions, nothing suggests she "is suffering from a terminal illness" with "an end of life trajectory"—prong (i)—or, as prong (ii) requires, that she has contracted a "serious

5

physical or medical condition" that "substantially diminishes" her ability "to provide self-care within the environment of a correctional facility" and she "is not expected to recover from" the condition.[2]  § 1B1.13 application notes 1(A).

This leaves Subdivision (D).  The guidance for this subsection advises that § 1B1.13 applies when "[a]s determined by the Director of the [BOP], there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)" of application note 1.[3]  *Id.* § 1B1.13 application notes 1(D).

A few courts have ruled that only the BOP may invoke the catchall provision of subdivision (D).  *United States v. Jackson* summarized the reasoning of one such decision:

> Congress gave the Sentencing Commission the mandate to decide what constitutes an extraordinary and compelling reason; the [First Step Act] did not expand the criteria for finding such a reason, but merely allowed defendants to file motions; there can be no relief under this statute without consistency with the policy statement; and the policy statement does not presently provide for a court determination of other reasons.

*United States v. Jackson*, No. 08-20150-02-JWL, 2020 WL 2812764, at *3 (D. Kan. May 29, 2020), *reconsidered on other grounds*, 2020 WL 4284312 (citing *United States v. Lynn*, No. 89-0072-WS, 2019 WL 3805349, at *2–4 (S.D. Ala. Aug. 13, 2019)).  But an "overwhelming majority of courts" have rejected this approach.  *Id.*  They instead have "concluded that a court may make the necessary determination that other circumstances warrant relief under this statute."

---

[2]  Prong (ii) also applies to "serious functional or cognitive impairment" and "deteriorating physical or mental health because of the aging process."  § 1B1.13 application notes 1(A)(ii).  Ms. Edwards's motion focuses on the risk the COVID-19 virus poses to her life, given her age and health status.  Her motion never reports that she has any impairment that independently can satisfy prong (ii).

[3]  As explained above, in Section II, § 3582 used to permit the BOP—but not inmates—to file a compassionate release motion.  But the First Step Act broadened § 3582(c)(1)(A), so an inmate now can file a motion.  *See* First Step Act of 2018, Pub. L. No. 115-391, § A 603(b)(1), 132 Stat. 5194, 5239 (2018).  The Sentencing Commission hasn't revised § 1B1.13 of the Guidelines since that amendment and so, the language used in this Guideline provision still requires a motion by the BOP.  *United States v. Jackson*, No. 08-20150-02-JWL, 2020 WL 2812764, at *3 (D. Kan. May 29, 2020).

*Id.* (citations omitted).  In other words, "[w]hile the old policy statement provides helpful guidance, it does not constrain the [c]ourt's independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3582(c)(1)(A)(i)." *Beck*, 425 F. Supp. 3d at 579; *see also Jackson*, 2020 WL 2812764, at *3 (assuming, for purposes of deciding the motion, that court is not limited to circumstances set forth in subdivisions (A) through (C)); *United States v. O'Bryan*, No. 96-10076-03-JTM, 2020 WL 869475, at *2 (D. Kan. Feb. 21, 2020) ("In the wake of the First Step Act, numerous courts have recognized the court can determine whether extraordinary and compelling reasons exist to modify a sentence—and may do so under the 'catch all' provision . . . ."); *United States v. Cantu*, 423 F. Supp. 3d 345, 352 (S.D. Tex. 2019) (concluding that the correct interpretation of § 3582(c)(1)(A) is that when a defendant brings a motion for a sentence reduction under the amended provision, the court can determine whether extraordinary and compelling reasons—outside those delineated in subdivisions (A)–(C)—warrant granting relief).

The court joins this prevailing view, concluding that it may decide whether "extraordinary and compelling" reasons warrant compassionate release.

### B. Ms. Edwards has not established that "extraordinary and compelling reasons" warrant compassionate release.

Ms. Edwards seeks compassionate release because, she asserts, her "comorbidities place [her] at extremely high risk for dire complications" if she contracts the COVID-19 virus.  Doc. 470 at 3.  The government asserts that Ms. Edwards's conditions do not qualify her for release.  Doc. 475 at 8.  The government admits Ms. Edwards suffers from conditions that put her at a high risk should she contract COVID-19.  *Id.* at 6–7.  And, it recognizes, numerous inmates at her facilty have tested positive for the virus.  *Id.* at 7.  But, the government contends that Ms. Edwards already is confined at a BOP Medical Center, and that Ms. Edwards's medical records

7

show that the BOP has provided "extensive care" for her. *Id.* And, the government argues, the other factors the court must consider weigh against release. *Id.* at 8–10.

To be sure, it is regrettable that Ms. Edwards is incarcerated during this pandemic. It is also regrettable that she has serious health problems. But the court isn't convinced that the combination of these circumstances qualifies her for release. The court reaches this conclusion "after considering the factors set forth in [18 U.S.C.] § 3553(a) to the extent that they are applicable"—the rubric § 3582(c)(1)(A) instructs the court to apply. Four of those statutory sentencing factors are particularly germane here. The next four subsections discuss them.

### 1. Nature and Circumstances of the Offense[4]

In March 2010, the Franklin County, Kansas Drug Enforcement Unit learned from a confidential informant that Ms. Edwards was selling and trading prescription pills. Doc. 253 at 6 (PSR ¶ 20). An investigation revealed that on May 9, 2009, William Thomas Powell had purchased what he thought was methamphetamine from Ms. Edwards at her home in Ottawa, Kansas. *Id.* (PSR ¶ 21). But the substance actually was prescription pills—hydrocodone, methadone, and carisoprodol—that Ms. Edwards's associate had crushed into a powder. *Id.* Later that evening, Ms. Edwards also sold Mr. Powell prescription pills. *Id.* Mr. Powell ingested the pills and injected the substance he thought was methamphetamine. *Id.* He was found dead the next day. *Id.* The coroner and toxicologist attributed his death to "polydrug toxicity." *Id.*

The PSR also details Ms. Edwards's extensive prescription pill conspiracy. *Id.* at 7–13 (PSR ¶¶ 22–58). She received sentencing enhancements because she was an organizer or leader of the criminal activity, obstructed justice, and possessed a firearm. *Id.* at 16–17 (PSR ¶¶ 79, 82,

---

[4] The facts discussed in parts 1–4 come from the PSR, which Ms. Edwards did not object to in any respect. Doc. 253 at 28 (PSR ¶ 147).

8

83).  To conclude with the obvious, Ms. Edwards committed a serious felony offense that cost a human being his life.  The nature and circumstances of the offense do not favor Ms. Edwards's motion.

### 2.  History and Characteristics of the Defendant

Ms. Edwards had only a few theft convictions from many years before her conviction in this case.  *Id.* at 18 (PSR ¶¶ 92–94).  The PSR calculated a criminal history category of I.  *Id.* at 19 (PSR ¶ 95).  But, as explained above, she orchestrated a significant drug conspiracy for several years.  Ms. Edwards also violated the conditions of her pretrial release by having prohibited contact with a witness and trying to persuade that witness to lie to law enforcement.  Doc. 146 at 1 (Order of Detention Pending Trial).  Ms. Edwards's track record in this case weighs against her motion.

From a health perspective, Ms. Edwards suffers from cancer, chronic kidney disease, chronic obstructive pulmonary disease, obesity, type 2 diabetes, and hypertension.  Doc. 481 at 4–9.  The court recognizes her health conditions and the outbreak at her facility place her at risk of complications from COVID-19.  Although Ms. Edwards's criminal history weighs against her request, her comorbidities favor her request.  This factor is neutral in the analysis.

### 3.  The Need for the Sentence to Reflect the Offense's Seriousness, to Provide Just Punishment, and to Afford Adequate Deterrence to Criminal Conduct

When the court sentenced Ms. Edwards, it adhered to the statutory mandate that it impose a sentence that was "not greater than necessary."  18 U.S.C. § 3553(a).  Ms. Edwards received a significant but, in context, appropriate sentence.  After she has served not even 32% of her sentence, reducing that sentence by almost 70% would produce a sentence that no longer reflects the gravity of Ms. Edwards's criminal conduct.  Likewise, such a reduced sentence no longer

would furnish adequate deterrence to criminal conduct or provide just punishment.  These factors weigh against Ms. Edwards's motion.

### 4. The Sentencing Range Established for the Applicable Category of Offense Committed by the Applicable Category of Defendant

The PSR calculated a Guidelines sentence of life imprisonment.  Doc. 253 at 24 (PSR ¶ 122).  Reducing Ms. Edwards's sentence to time-served would reduce it to about a 96-month custody sentence, well below the applicable guideline range.  A 96-month custody sentence represents 32% of Ms. Edwards's 300-month custody sentence.  No new circumstance justifies this disparity.[5]

### C. Conclusion

In sum, the pertinent sentencing factors in 18 U.S.C. § 3553(a) do not favor the reduction Ms. Edwards's motion seeks.  Indeed, the only thing that favors her request is the fact that, regrettably, she suffers from significant health problems.  The court recognizes that her health status—at least in theory—has the potential to increase the severity of the sentence beyond the 300 months already imposed.  *United States v. Mel*, No. CR TDC-18-0571, 2020 WL 2041674, at *3 (D. Md. Apr. 28, 2020) ("The fact that Mel has been incarcerated . . . during a serious outbreak of COVID-19 inside the facility sufficiently increased the severity of the sentence beyond what was originally anticipated . . . .").  But this factor has not increased the sentence's severity to the point where an almost 70% reduction in Ms. Edwards's custody sentence is sufficient.

---

[5] The court is mindful of the other factors identified by § 3553(a).  They are not pertinent, however, to the current motion.

The court is not prepared to conclude that Ms. Edwards's health conditions provide sufficient reason for her release under § 3582(c)(1)(A).  The court thus denies Ms. Edwards's Motion for Compassionate Release (Doc. 470).

**IT IS THEREFORE ORDERED BY THE COURT THAT** Ms. Edwards's Motion for Compassionate Release (Doc. 470) is denied.

**IT IS SO ORDERED.**

**Dated this 29th day of September, 2020, at Kansas City, Kansas.**

<u>s/ Daniel D. Crabtree</u>
**Daniel D. Crabtree**
**United States District Judge**