IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

                              Plaintiff,                    Case No. 12-20015-01-DDC

v.

CONNIE EDWARDS (01),

                              Defendant.

MEMORANDUM AND ORDER

     This is a tragic case.  It's tragic that defendant Connie Edwards engaged in a conspiracy to distribute controlled substances.  It's tragic that Ms. Edwards's conspiracy caused a man to overdose and die.  And it's tragic that Ms. Edwards—who is aging and medically frail—is suffering in federal prison.

     This matter comes before the court on Ms. Edwards's Motion to Reduce Sentence (Doc. 523).  Citing her significant and numerous health ailments, Ms. Edwards asks the court to grant her compassionate release.  The court concludes that Ms. Edwards's situation presents extraordinary and compelling circumstances, warranting a reduction in her sentence.  But the court also concludes that Ms. Edwards hasn't yet served a sentence sufficient to reflect the gravity of the offense she committed.  The court thus denies Ms. Edwards's Motion to Reduce Sentence (Doc. 523).

**I.      Background**

     In March 2010, the Franklin County, Kansas Drug Enforcement Unit learned from a confidential informant that Ms. Edwards was selling and trading prescription pills.  Doc. 253 at 6

(Presentence Investigation Report ("PSR") ¶ 20).  Kansas law enforcement officers learned that on May 9, 2009, William Thomas Powell had purchased several drugs—including hydrocodone, methadone, and carisoprodol—from Ms. Edwards and a co-defendant, Tamara Ledom.  *Id.* (PSR ¶ 21).  Later that same day, Mr. Powell purchased prescription pills from Ms. Edwards.  *Id.*  Believing the pills were methamphetamine, Mr. Powell injected them intravenously.  *Id.*  The next day, he was found unconscious and was taken to the hospital where he was pronounced dead.  *Id.*  The coroner and toxicologist attributed his death to "polydrug toxicity[.]" *Id.*  The PSR—which Ms. Edwards didn't object to—describes an extensive criminal drug conspiracy.  *Id.* at 7–13 (PSR ¶¶ 22–58).  In connection with that conspiracy, Ms. Edwards, the leader, owned or controlled eight separate properties.  *Id.* at 7, 15, 17 (PSR ¶¶ 23, 68, 82).  The PSR explains how Ms. Edwards used these properties to facilitate the storage and sale of illicit narcotics.  *Id.* at 6, 7, 15 (PSR ¶¶ 20, 24, 69).

In October 2012, a grand jury returned a 23-count Third Superseding Indictment against Ms. Edwards and others.  Doc. 159.  Count 1 charged Ms. Edwards with conspiring to distribute and possess with intent to distribute oxycodone, hydrocodone, methadone, morphine, and methamphetamine, with death and serious bodily injury resulting from the use of the substances.  *Id.* at 2.  In November 2012, Ms. Edwards entered a plea agreement with the government.  Doc. 206; Doc. 207.  She pleaded guilty to Count 1 of the Third Superseding Indictment.  Doc. 207 at 1–2.  The PSR calculated a total offense level of 43—the highest offense level recognized by the Sentencing Guidelines—and a criminal history category of I, producing a guideline sentence of life imprisonment.  Doc. 253 at 24 (PSR ¶ 122).  In March 2013, the court[1] sentenced Ms.

---

[1]    United States District Judge Carlos Murguia presided over Ms. Edwards's sentencing.

Edwards to a 300-month term of imprisonment followed by five years of supervised release.
Doc. 267 at 2–3 (Judgment).

Ms. Edwards previously filed a Motion for Compassionate Release (Doc. 470), which the
court denied.  Doc. 482.  Ms. Edwards now asks the court again to reduce her sentence.  Doc.
523.  Ms. Edwards's motion describes her many and significant health ailments.  These include
new-onset atrial fibrillation, an adrenal tumor, severely impaired mobility, uncontrolled
hypertension, type 2 diabetes mellitus, stage 3 chronic kidney disease, chronic pulmonary
obstructive disease, coronary artery disease, major depressive disorder, long COVID, and a
history of cancer.  Doc. 523 at 6–14.  Ms. Edwards's litany of medical conditions presents a
persuasive case for release.  And the court is sympathetic to Ms. Edwards's unfortunate situation.
Still, releasing Ms. Edwards after she has served just half[2] of her below-the-guidelines sentence
is inconsistent with the § 3553(a) factors, which the court must weigh.  So, the court concludes it
doesn't have authority to grant Ms. Edwards's motion, as explained below.

## II.     Legal Standard

"'Federal courts are forbidden, as a general matter, to modify a term of imprisonment
once it has been imposed, but the rule of finality is subject to a few narrow exceptions.'"  *United*

---

[2]     By the court's calculations—if good time is excluded—Ms. Edwards has served less than half
(about 48%) of her sentence.  If good time is included, Ms. Edwards has served more than half (about
59%) of her sentence.  Courts consider either or both of these metrics when adjudicating compassionate
release requests.  *See, e.g.*, *United States v. Johnson*, No. 10 CR 431 (CM), 2021 WL 1222234, at *3
(S.D.N.Y. Apr. 1, 2021) ("The 300-month sentence that Johnson originally received was fully warranted,
and he has served only a little more than half of it—less than half if good time is not factored in."), *aff'd
sub nom. United States v. English*, No. 21-940-CR, 2022 WL 16984529 (2d Cir. Nov. 17, 2022); *United
States v. Thomas*, No. 14-CR-00182-1, 2021 WL 5054109, at *6 (M.D. Tenn. Nov. 1, 2021) ("Defendant
has served . . . more than half [his sentence] if one factors in expected credit for good time served[.]");
*United States v. Contreras*, 504 F. Supp. 3d 1052, 1054 (D.S.D. 2020) ("He has served over 22 years of
his sentence, which is 71.5 percent of his full term and 82.9 percent of his statutory term (which takes into
account good time credit)."); *United States v. Hendrick*, No. 07-CR-23-TBR, 2021 WL 1396313, at *1
(W.D. Ky. Apr. 13, 2021) (excluding implicitly good time to calculate that defendant had "served
approximately 13.5 years (54 percent)" of 300 month term).

*States v. Bradley*, 97 F.4th 1214, 1217 (10th Cir. 2024) (quoting *Freeman v. United States*, 564 U.S. 522, 526 (2011)).  *See also United States v. White*, 765 F.3d 1240, 1244 (10th Cir. 2014) ("It is well-settled that a district court is authorized to modify a defendant's sentence only in specified instances where Congress has expressly granted the court jurisdiction to do so." (quotation cleaned up)).  Title 18 U.S.C. § 3582(c)—commonly called the compassionate release statute—permits a court to modify a term of imprisonment but only if certain exceptions apply.  For many years, these exceptions permitted only the Bureau of Prisons ("BOP") to bring a motion under the compassionate release statute.  But in 2018, the First Step Act modified the compassionate release statute and authorized a defendant to file her own motion for relief.  First Step Act of 2018, Pub. L. No. 115-391, § 603(b)(1), 132 Stat. 5194, 5239 (2018).  This amendment authorized an inmate to make such a motion, but only after she "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on [her] behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]"  18 U.S.C. § 3582(c)(1)(A).

To guide district courts analyzing compassionate release motions, the Tenth Circuit has adopted a three-part test.  *United States v. McGee*, 992 F.3d 1035, 1042–43 (10th Cir. 2021). *First*, "a district court must find whether extraordinary and compelling circumstances warrant a sentence reduction."  *Id.* at 1042 (quotation cleaned up).  *Second*, "a district court must find whether such reduction is consistent with applicable policy statements issued by the Sentencing Commission."  *Id.* (quotation cleaned up).  *Third*, "§ 3582(c)(1)(A) instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by steps one and two is warranted in whole or in part under the particular circumstances of the case."  *Id.* at 1042–43 (quotation cleaned up).  The court must address all

three steps to grant a motion for compassionate release.  *Bradley*, 97 F.4th at 1218.  But "if the most convenient way for the district court to dispose of a motion for compassionate release is to reject it for failure to satisfy one of the steps," the court needn't address the others.  *Id.* (quotation cleaned up).

## III.      Analysis

This Order's reasoning unfolds in three distinct steps.  *First*, the court concludes there are no procedural hurdles to assessing the merits of Ms. Edwards's motion.  *Second*, the court applies the three-prong compassionate release test, finding Ms. Edwards satisfies the first two prongs but fails the third one.  *Third*, the court discusses other compassionate release cases and explains why those cases don't alter the court's conclusion.

### A.      Exhaustion of Administrative Remedies

Ms. Edwards asserts that she has exhausted administrative remedies and thus satisfied the prerequisite for bringing a compassionate release motion under 18 U.S.C. § 3582(c)(1)(A).  Doc. 523 at 17–18.  The government concedes this point.  Doc. 527 at 4.  And so, the court needn't inquire any further.  *See United States v. Hemmelgarn*, 15 F.4th 1027, 1031 (10th Cir. 2021) (concluding that "§ 3582(c)(1)(A)'s exhaustion requirement is a claim-processing rule" and not jurisdictional so government's waiver of issue removes bar to assessing motion on merits).[3]  The

---

[3]      The court is skeptical that Ms. Edwards would satisfy the exhaustion requirement if the government hadn't conceded it.  Section 3582(c)(1)(A) allows a defendant to bring a compassionate release motion but only after (1) "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or (2) "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility[.]"  18 U.S.C. § 3852(c)(1)(A).  Ms. Edwards can't satisfy the first option because she didn't fully exhaust her administrative appeal rights.  Her papers don't suggest she appealed the warden's denial.  *See* Doc. 523 at 18 (suggesting warden's denial alone satisfies exhaustion requirement); *see also* Doc. 523-5 at 2 (Def. Ex. D) (denying Ms. Edwards's request for compassionate release and advising she "may appeal this denial through the Administrative Remedy Program").  Nor can Ms. Edwards satisfy the second option because the warden responded to her request within 30 days.  Doc. 523 at 18 ("Ms. Edwards requested compassionate release on March 29, 2023.  The Warden denied her request on April 11, 2023.").  And the second option is available only if the warden hasn't responded within 30 days.  *United States v. Maumau*,

court next addresses the extraordinary and compelling reasons requirement—the first prong of the compassionate release test.

### B.        Extraordinary and Compelling Circumstances

Ms. Edwards's situation presents extraordinary and compelling reasons for a sentence reduction, satisfying the first prong of the compassionate release inquiry.  The government essentially concedes as much.  Doc. 527 at 9 ("Thus, under the circumstances, the defendant may have established extraordinary and compelling reasons . . . allowing for consideration of compassionate release under Section 3582(c)(1)(A).").  But to give full consideration to Ms. Edwards's position—and because the nature of extraordinary and compelling circumstances meaningfully informs the court's § 3553(a) analysis at step three—the court explains Ms. Edwards's circumstances, below.

### 1.  Medical Frailty and Substandard Care

Ms. Edwards's papers—supported by extensive and voluminous records—document her significant medical issues.  Doc. 523 at 6–14; Doc. 523-1; Doc. 523-2.  Ms. Edwards suffers from "an extensive list of chronic illnesses and conditions[.]"  Doc. 523 at 6.

*First*, Ms. Edwards has been diagnosed with new-onset atrial fibrillation, an "illness with threat to life or bodily function."  Doc. 523 at 7.  Ms. Edwards asserts that she has received substandard care in addressing this condition at FMC Carswell—where she is incarcerated.  *Id.* at 7–9. For instance, after being hospitalized in November 2022 and prescribed a medication for atrial fibrillation, FMC Carswell switched her medication without consulting Ms. Edwards's

---

993 F.3d 821, 830 (10th Cir. 2021) (noting second option is satisfied after "passage of 30 days from the defendant's *unanswered* request to the warden for such relief" (emphasis added)).  But the government didn't assert this procedural defect.  *See generally* Doc. 527.  So it doesn't bar the relief Ms. Edwards seeks.  *See Hemmelgarn*, 15 F.4th at 1031 (concluding § 3582(c)(1)(A)'s exhaustion requirement isn't jurisdictional).

cardiologist.  *Id.* at 7–8.  And despite the hospital documenting the urgency of scheduling a

follow-up visit by November 18, 2022, FMC Carswell made no such arrangement until January

20, 2023.  *Id.* at 8.  At that appointment, Ms. Edwards's doctor instructed FMC Carswell to

switch her medication back to what was originally prescribed.  *Id.*  But FMC Carswell ignored

those instructions.  *Id.*

*Second*, Ms. Edwards suffers from an adrenal tumor.  *Id.* at 9.  That tumor has caused Ms.

Edwards aggravated hypertension (high blood pressure).  *Id.* at 9.  And, according to Ms.

Edwards, BOP's failure to provide lab results to Ms. Edwards's medical providers has precluded

a necessary medical procedure.  *Id.*

*Third*, Ms. Edwards's mobility is severely impaired.  *Id.* at 9–10.  Ms. Edwards's papers

list the "confluence of conditions" that have affected her mobility.  *Id.* at 9.  These include

"bursitis, chondrocalcinosis, diabetic neuropathy, degenerative disc disease, edema, obesity,

osteoarthritis, osteoporosis, and vertigo."  *Id.*  Ms. Edwards is unable to move without a walker

or wheelchair.  *Id.* at 9–10.  FMC "Carswell's physical therapist assessed Ms. Edwards's lower

extremity functioning as 'very low'" and "reported that Ms. Edwards was able to walk in

intervals of twenty to sixty feet before needing to rest."  *Id.* at 10.  Until March 2023, FMC

Carswell denied Ms. Edwards a wheelchair, causing Ms. Edwards routinely to miss getting

medicine—including insulin—because she couldn't traverse four floors to access the pill line.

*Id.*  Before receiving a wheelchair, Ms. Edwards also fell several times.  *Id.*

*Fourth*, Ms. Edwards has diabetes.  *Id.* at 11.  That condition impairs her mobility, kidney

function, and vision.  *Id.*

*Fifth*, Ms. Edwards has been diagnosed with stage 3 chronic kidney disease.  *Id.*  Stage 3

kidney disease is often incurable, already having inflicted irreversible damage.  *Id.*  Ms.

Edwards's kidney disease also prevents her from taking NSAIDs, which aggravates her other medical conditions by limiting pain management options. *Id.*

*Sixth*, Ms. Edwards suffers from chronic obstructive pulmonary disease. *Id.* at 12. The chronic care clinic requested a sleep study for Ms. Edwards in February 2021. *Id.* After FMC Carswell failed to fulfill this request for over a year and a half, the chronic care clinic reiterated the need for a sleep study for Ms. Edwards in September 2022. *Id.* As of the filing of Ms. Edwards's motion, FMC Carswell hadn't fulfilled the request. *Id.*

*Seventh*, a series of additional medical issues plague Ms. Edwards. These afflictions include coronary artery disease, mild central venous congestion, atherosclerosis, and long COVID. *Id.* at 12–13. Ms. Edwards also has an ongoing history with cancer. *Id.* at 13–14. And Ms. Edwards maintains that FMC Carswell hasn't responded to her oncologist's directives with appropriate urgency. *Id.* at 14. This includes delaying "urgent" mammograms and biopsies for weeks or months. *Id.* at 13–14, 22.

The government doesn't contest Ms. Edwards's descriptions of her extensive medical conditions or the lackluster medical care provided at FMC Carswell. *See generally* Doc. 527. And Ms. Edwards has supported her claims of medical frailty with extensive documentation. Doc. 523-1; Doc. 523-2. So, for the purposes of this motion, the court accepts these descriptions as true.

The court next applies the pertinent legal standard and concludes that Ms. Edwards satisfies the first prong of the compassionate release test.

## 2. Application to Legal Standard

When applying the first prong of the compassionate release test, district courts "have the authority to determine for themselves what constitutes 'extraordinary and compelling reasons[.]'" *United States v. Hald*, 8 F.4th 932, 938 n.4 (10th Cir. 2021) (quotation cleaned up).

But that discretion is "bounded" by the second prong of the test, which requires any sentence reduction to be consistent with "applicable policy statements issued by the Sentencing Commission." *Maumau*, 993 F.3d at 832.[4]  While the policy statements in the sentencing guidelines "'describe those characteristic or significant qualities or features that typically constitute extraordinary and compelling reasons[,]'" they "do not define 'exclusively' what courts may consider extraordinary and compelling reasons for a sentence reduction[.]" *United States v. Burke*, No. CR-21-0655-JB, 2024 WL 3829969, at *17 (D.N.M. Aug. 15, 2024) (quoting *McGee*, 992 F.3d at 1045); *see also* U.S. Sent'g Guidelines Manual § 1B1.13(b)(5) (U.S. Sent'g Comm'n 2023) (explaining that "extraordinary and compelling reasons" may be found where the "defendant presents any other circumstance or combination of circumstances that, when described by themselves or together with any of the reasons described" in the policy statement, "are similar in gravity to those described in" the policy statements).

The Sentencing Commission Guidelines Manual lists a series of circumstances that satisfy the "extraordinary and compelling" standard.  U.S.S.G. § 1B1.13(b).  Several of the examples in the sentencing guidelines lead the court to conclude that Ms. Edwards's situation presents extraordinary and compelling reasons for a sentence reduction:

- "The defendant is—(i) suffering from a serious physical or medical condition, . . . or (iii) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id.* at § 1B1.13(b)(1)(B).

- "The defendant (A) is at least 65 years old; (B) is experiencing a serious deterioration in physical or mental health because of the aging process; and (C) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." *Id.* at § 1B1.13(b)(2).

---

[4]  While the court necessarily consults the second prong to complete its analysis of the extraordinary and compelling reasons prong, it also returns to the second prong, in § III.C, to analyze an additional requirement—danger to the safety of others.

Ms. Edwards satisfies both of these tests.  *First*, she satisfies § 1B1.13(b)(1)(B).  The combination of Ms. Edwards's medical ailments easily qualifies as a serious physical condition. Indeed, courts—including our court—regularly find combinations of medical ailments like Ms. Edwards's serious.  *E.g.*, *United States v. Cambiano*, No. 17-20038-07-DDC, 2021 WL 2666776, at *2 (D. Kan. June 29, 2021) (finding combination of "high blood pressure, obesity, COPD, diabetes, certain kidney conditions, and heart conditions . . . while incarcerated during the COVID-19 pandemic . . . presents an extraordinary and compelling reason"); *Burke*, 2024 WL 3829969, at *21 (finding diabetes and kidney disease are serious medical conditions); *United States v. Mujo*, No. 15-CR-00072-JDL-2, 2023 WL 334381, at *3 (D. Me. Jan. 20, 2023) (describing obesity, diabetes, and hypertension as "serious medical conditions"); *United States v. Smith*, No. CR-ELH-18-017, 2024 WL 4111118, at *9 (D. Md. Sept. 5, 2024) (describing combination of "asthma, diabetes, coronary artery disease, hypertension, kidney disease, chronic obstructive pulmonary disease, and obesity" as "serious medical conditions"); *United States v. Littles*, No. CR 612-001-6, 2020 WL 6372949, at *1 (S.D. Ga. Oct. 29, 2020) (assuming combination of "type 2 diabetes mellitus, hypertension, atrial fibrillation, hyperlipidemia, and morbid obesity" satisfies first prong of compassionate release test).

Alternatively, Ms. Edwards's condition also appears to have deteriorated because of the aging process.  When Ms. Edwards filed a Motion for Compassionate Release in 2020, her list of health conditions didn't include several of the ones included in her current motion.  *Compare* Doc. 470 at 3–4, *with* Doc. 523 at 6–14.  For instance, in 2020, a doctor hadn't diagnosed Ms. Edwards with atrial fibrillation.  *See generally* Doc. 470.  Ms. Edwards also contends that her condition has deteriorated since 2020.  Doc. 523 at 6.  And the government doesn't contest that

characterization.  *See generally* Doc. 527.  The court thus concludes Ms. Edwards's condition is

deteriorating due to the aging process.

The court also finds that Ms. Edwards's conditions impair her ability to provide self-care.

Ms. Edwards has limited mobility.  *See United States v. Gamboa*, 467 F. Supp. 3d 1092, 1102

(D.N.M. 2020) (noting that defendant's "limited mobility . . . makes it difficult for him to

provide self-care").  And she maintains that her limited mobility has impaired her access to

medicine and meals.  Doc. 523 at 21.  Ms. Edwards's former roommate wrote that she had to

assist Ms. Edwards with basic tasks like washing her clothes, making her bed, and cleaning the

room.  *Id.*; *see also* Doc. 523-7 at 19.  The court thus concludes that Ms. Edwards's conditions

make self-care difficult.  And so, Ms. Edwards satisfies the "extraordinary and compelling"

standard as explained in § 1B1.13(b)(1)(B) of the Guidelines Manual.

*Second*, Ms. Edwards likewise satisfies the description of an extraordinary and

compelling circumstance described in § 1B1.13(b)(2).  Recall this test is satisfied where a

defendant (1) is at least 65 years old; (2) is experiencing a serious deterioration in physical health

because of the aging process; and (3) has served at least 10 years of her sentence.  U.S.S.G.

§ 1B1.13(b)(2).  Ms. Edwards meets all three requirements.  *First*, Ms. Edwards is over 65 years

old.  *Second*, as discussed, Ms. Edwards's physical condition is deteriorating because of the

aging process.  And *third*, Ms. Edwards has served more than ten years of imprisonment.

One last point here.  The inadequate medical care Ms. Edwards describes in her papers

troubles the court.  When medical professionals set deadlines for procedures, testing, and return

visits, BOP should honor those deadlines.  The failure of FMC Carswell to provide timely and

effective care to Ms. Edwards underscores the court's conclusion that Ms. Edwards satisfies the

first prong of the compassionate release test.  *See United States v. Verasawmi*, No. CR 17-254

(FLW), 2022 WL 2763518, at *7 (D.N.J. July 15, 2022) ("Several courts have concluded that the failure to provide necessary treatment or undue delays in treating serious medical conditions may present 'extraordinary and compelling reasons' warranting compassionate release."); *see also United States v. Beck*, 425 F. Supp. 3d 573, 588 (M.D.N.C. 2019) (concluding that defendant's "invasive cancer and the abysmal health care BoP has provided qualify as 'extraordinary and compelling reasons' warranting a reduction in her sentence"). But the court doesn't have authority to grant Ms. Edwards's motion on this basis alone. *See White*, 765 F.3d at 1244 (instructing that district courts have power to modify sentences only in specific instances Congress has authorized).[5]

For multiple reasons, Ms. Edwards thus satisfies the first prong. Her severe and numerous medical conditions, impaired mobility, and substandard care convince the court she has presented extraordinary and compelling reasons for a sentence reduction. And this conclusion is consistent with the applicable policy statements promulgated by the Sentencing Commission. On to the next prong.

### C.    Applicable Policy Statements

An order granting compassionate release also must comply with "applicable policy statements issued by the Sentencing Commission." *McGee*, 992 F.3d at 1042 (quotation cleaned up). The relevant policy statements are supplied by the Sentencing Commission Guidelines Manual § 1B1.13. Those policy statements inform the decision whether particular what circumstances qualify as extraordinary and compelling reasons. U.S.S.G. § 1B1.13(b). And as outlined in § III.B, above, Ms. Edwards satisfies the first prong of the compassionate release test,

---

[5]      While Ms. Edwards's allegations about the medical care at FMC Carswell are troubling, "'*Bivens*' actions are a more suitable remedy to problems with prison medical care rather than compassionate release motions." *Burke*, 2024 WL 3829969, at *15 n.6.

consistent with the applicable policy statement.  The policy statements also impose an additional requirement, however.  They caution the court to reduce a defendant's sentence only if "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)[.]"  U.S.S.G. § 1B1.13(a)(2).[6]  As explained below, Ms. Edwards satisfies this requirement as well.

To determine whether a defendant is a danger upon release, the court evaluates "(1) the nature and circumstances of the offense charged . . .; (2) the weight of evidence against the person; (3) the history and characteristics of the person . . .; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release."  18 U.S.C. § 3142(g).  On balance, these factors suggest Ms. Edwards likely wouldn't present a danger if released.  No doubt, Ms. Edwards pleaded guilty to a serious crime, which involved the death of a man.  But the court "must look beyond the inherent dangerousness of the offense that the defendant committed, and must consider" the threat which "remains at the time he seeks compassionate release."  *United States v. Greene*, 516 F. Supp. 3d 1, 25 (D.D.C. 2021) (Brown Jackson, J.).

Here, Ms. Edwards persuasively argues that she no longer poses any threat to the community.  Doc. 523 at 30–31.  Tellingly, the government doesn't contest this position.  *See* Doc. 527 at 11.  Several points also favor Ms. Edwards's side of this analysis.  *First*, as Ms.

---

[6]      Title 18 U.S.C. § 3142(g) offers guidance for determining whether a court should detain a defendant pending trial.  It lists factors for a judicial officer to analyze "in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(g).  But the Sentencing Guidelines direct courts to weigh these same factors to determine whether an inmate moving for compassionate release is "a danger to the safety of any other person or to the community[.]"  U.S.S.G. § 1B1.13(a)(2); *see also Burke*, 2024 WL 3829969, at *22–23 (applying § 3142(g) factors for analysis of second prong of compassionate release test).

Edwards notes, older people are significantly less likely to recidivate than younger offenders.[7]

Doc. 523 at 30.  *Second*, Ms. Edwards has virtually zero criminal history before the conviction

for which she is serving time.  Doc. 253 at 18 (PSR ¶ 95) (computing a criminal history score of

zero).  This characteristic also suggests Ms. Edwards is unlikely to recidivate.  *See Gamboa*, 467

F. Supp. 3d at 1102 (finding defendant poses no danger where he had no prior criminal history).

And that conclusion is amplified when assessed in conjunction with her age.[8]  *Third*, Ms.

Edwards's impaired mobility and deteriorating physical condition reduce the likelihood that she

poses any danger upon release.  *See Burke*, 2024 WL 3829969, at *23 ("[T]he risk that

[defendant] will engage in criminal activity upon release is lessened by the fact that his medical

conditions have progressed significantly since he committed his offense[.]"); *United States v.

Cotinola*, 487 F. Supp. 3d 1132 (D.N.M. 2020) (concluding defendant posed no threat to public

safety where he was in poor health and dependent on dialysis).

Overall, the critical facts persuade the court to find that Ms. Edwards doesn't pose a

threat to the public.  So, Ms. Edwards satisfies the second prong of the compassionate release

test.  Now, prong three.

### D.   Section 3553(a) Factors

The final prong of the compassionate release test directs the court to "'consider any

applicable 18 U.S.C. § 3553(a) factors and determine whether, in its discretion, the reduction

authorized by steps one and two is warranted in whole or in part under the particular

---

[7]     Multiple reports from the Sentencing Commission have reached this conclusion.  *E.g.*, U.S.
Sent'g Comm'n, *Older Offenders in the Federal System* 43 (2022) ("The recidivism rate of older
offenders (21.3%) was less than half that of offenders under the age of 50 (53.4%)[.]"); U.S. Sent'g
Comm'n, *The Effects of Aging on Recidivism Among Federal Offenders* 3 (2017) ("Older offenders were
substantially less likely than younger offenders to recidivate following release.").

[8]     U.S. Sent'g Comm'n, *The Effects of Aging on Recidivism Among Federal Offenders* 3 (2017)
("Age and criminal history exerted a strong influence on recidivism.").

circumstances of the case.'" *Bradley*, 97 F.4th at 1217 (quoting *Hald*, 8 F.4th at 937–38). Section 3553(a) instructs the court to consider a variety of factors. The court highlights those factors that are most pertinent to its analysis, below. To grant Ms. Edwards's motion, the court must find these factors weigh in favor of release. That is, even "where defendants establish extraordinary and compelling reasons warranting their release that are consistent with applicable policy statements, the Court's consideration of the § 3553(a) factors may serve as an independent bar to the reduction of a defendant's sentence." *Burke*, 2024 WL 3829969, at *24 (citing *United States v. Wirichaga-Landavazo*, No. 23-4040, 2023 WL 7166173, at *4 (10th Cir. Oct. 31, 2023)).

**1. Nature and Circumstances of the Offense**

The first § 3553(a) factor directs courts to assess the "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). As the Court identified in its Order denying Ms. Edwards's prior request for a sentence reduction, this factor weighs against Ms. Edwards. Doc. 482 at 8–9. The PSR, to which Ms. Edwards did not object, describes Ms. Edwards's extensive prescription pill conspiracy. Doc. 253 at 7–13 (PSR ¶¶ 22–58). The PSR assigned sentencing enhancements to Ms. Edwards because she was an organizer or leader of the criminal activity, obstructed justice, and possessed a firearm. *Id.* at 16, 17 (PSR ¶¶ 79, 82, 83). Even where no one is harmed directly by drug trafficking, courts regularly weigh this factor against defendants implicated in drug distribution charges. *Burke*, 2024 WL 3829969, at *24 (compiling cases). Here, not only did Ms. Edwards conspire to distribute narcotics, she did so in a manner that produced the death of a human being. So, even though Ms. Edwards has little criminal history and poses little danger to the community, this factor weighs against reducing her sentence.

### 2.   Need for Sentence

Section § 3553(a)(2) instructs the court to weigh

> the need for the sentence imposed—
>
> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> >
> > (B) to afford adequate deterrence to criminal conduct;
> >
> > (C) to protect the public from further crimes of the defendant; and
> >
> > (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

18 U.S.C. § 3553(a)(2).  This factor also weighs against Ms. Edwards's motion.  To be sure, it's unlikely that incarceration is necessary to protect the public from Ms. Edwards.  *See* § III.C. And based on Ms. Edwards's papers, perhaps better medical care is available outside the confines of FMC Carswell.  *But see Burke*, 2024 WL 3829969, at *15 n.6 (opining that it's difficult for courts to "compare the care in a medical BOP Facility with care on the outside, particularly where the court must speculate regarding the quality of medical [care] a defendant might receive once released").  But for the sentence "to reflect the seriousness of the offense," "promote respect for the law," and "provide just punishment for the offense[,]" releasing Ms. Edwards now is inappropriate.  *See* 18 U.S.C. § 3553(a)(2)(A).  As the court has reiterated, the gravity of Ms. Edwards's offense is difficult to overstate.  Ms. Edwards's conduct—and the resulting death—"still have lasting and detrimental effects[.]"  *See United States v. Ruiz*, 507 F. Supp. 3d 907, 911 (N.D. Ohio 2020).

Ms. Edwards argues the deterrent effect of lengthy prison sentences is modest.  Doc. 523 at 32 (citing Steven N. Durlauf & Daniel S. Nagin, *Imprisonment and Crime*, 10 Criminology & Pub. Pol'y 13, 14 (2011)).  Even if true—and the court is convinced by the article's

proposition—that argument doesn't persuade the court.  The deterrent effect is just one piece of this factor.  And what's most significant in this case is the need for the sentence to reflect the seriousness of the crime.

Ms. Edwards also argues the COVID-19 pandemic has made her sentence unduly harsh. Doc. 523 at 31.  As it did when denying her previous motion, the court credits this argument. *See* Doc. 482 at 10.  Still, even in light of the harshness of her confinement, the court can't agree this factor supports Ms. Edwards's compassionate release.  The guideline sentence for Ms. Edwards's pleaded offense was life.  Doc. 253 at 24 (PSR ¶ 122).  Reducing her sentence to time served—about 12 years, which represents just half of the original sentence the court imposed— would not reflect the seriousness of the offense, promote respect for our laws, and provide just punishment for the offense.  *See* 18 U.S.C. § 3553(a)(2)(A).  This factor thus weighs against Ms. Edwards.

### 3.   Kinds of Sentences Available and Guidelines

The next two factors consider "the kinds of sentences available" and "the kinds of sentence and the sentencing range established" by the Sentencing Commission.  *Id.* at § 3553(a)(3), (4).  These factors, too, weigh against Ms. Edwards's motion.  By taking a plea agreement, Ms. Edwards proposed a sentence (of 25-years imprisonment) that was lower than the life imprisonment recommended by the guidelines.  Doc. 207 at 10.  In light of the guideline recommendation, these factors caution against granting an additional reduction in Ms. Edwards's sentence.

### 4.   Sentencing Parity

The court next considers "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]"  18 U.S.C. § 3553(a)(6).  One of Ms. Edwards's co-defendants, Ms. Ledom, pleaded guilty to the same

offense as Ms. Edwards.  Doc. 258 at 1.  As part of the binding plea agreement Ms. Ledom accepted, the court sentenced her to a term of imprisonment of 18 years.  Doc. 296 at 4–5 (Ledom PSR ¶ 6); Doc. 309 at 2 (Ledom Judgment).  By all accounts, Ms. Edwards was the more culpable co-defendant.  *Compare* Doc. 253 at 16–17 (PSR ¶¶ 79, 80, 82, 83) (enhancements for possessing a firearm, maintaining rental properties as part of conspiracy, leading or organizing criminal activity, and obstructing justice), *with* Doc. 296 at 18 (Ledom PSR) (no corresponding enhancements).  And Ms. Ledom is still incarcerated—albeit in a halfway house—with a projected release date of August 23, 2026.[9]  So, granting Ms. Edwards's motion would result in an unwarranted sentencing disparity between Ms. Edwards and a less culpable codefendant.  This factor thus weighs against Ms. Edwards.

### 5.  Totality[10]

When evaluated in totality, the § 3553(a) factors counsel the court to deny Ms. Edwards's motion.  None of the factors support Ms. Edwards's motion.  And while Ms. Edwards's extraordinary and compelling circumstances "are relevant to the § 3553(a) analysis[,]" *Hald*, 8 F.4th at 947, the § 3553(a) factors, independently, still can bar a reduction of the defendant's sentence.  *Burke*, 2024 WL 3829969, at *24.  Here's the bottom line:  Releasing Ms. Edwards after she has served just half of her sentence isn't justified.  Even considering Ms. Edwards's serious medical situation, Ms. Edwards doesn't qualify for release under the § 3553(a) rubric.

---

[9]     This information is available on the Bureau of Prisons website.  Find an Inmate, *Bureau of Prisons*, https://www.bop.gov/inmateloc/ (last visited Sept. 26, 2024).

[10]    The remaining § 3553(a) factors—any pertinent policy statement and the need for restitution, 18 U.S.C. § 3553(a)(5), (7)—are not pertinent here.

### E.      Differentiating Other Cases

As something of a cross-check, the court considers results in several cases Ms. Edwards cites—and several others—and explains why they don't alter the court's decision to deny Ms. Edwards's motion.

#### 1.  Cases from this Court

Ms. Edwards cites two cases where our court found "[p]eople with fewer medical conditions than Ms. Edwards . . . met the 'extraordinary and compelling' standard."  Doc. 529 at 2 (first citing *Cambiano*, 2021 WL 2666776, at *2; then citing *United States v. Carter*, No. 17-40055-01-DDC, 2021 WL 4892967, at *2 (D. Kan. Oct. 20, 2021)).  Ms. Edwards cited these cases in her reply brief to support her position that she, too, presents extraordinary and compelling reasons for a sentence reduction.  *Id.*  The court agrees with the premise of Ms. Edwards's argument.  As explained, *see* § III.B, the court has no difficulty finding Ms. Edwards satisfies the first prong of the compassionate release test.  But both of these cases also support the court's ultimate conclusion.

In *Cambiano*, the court had sentenced the defendant to 135 months' imprisonment after Mr. Cambiano pleaded guilty to conspiracy to distribute and possession with intent to distribute more than 50 grams of methamphetamine.  2021 WL 2666766, at *1, *4.  The defendant moved for compassionate release.  *Id.* at *1.  And the court ruled on the motion after the defendant had served about 65 months—48% of the original sentence.  *Id.* at *3.  The court concluded that Mr. Cambiano's combination of medical ailments—"high blood pressure, obesity, COPD, diabetes, certain kidney conditions, and heart conditions"—presented extraordinary and compelling reasons to reduce his sentence.  *Id.* at *2.  But the court nonetheless rejected the defendant's motion.  *Id.* at *4.  Important to the court was the magnitude of reduction that Mr. Cambiano requested.  *Id.*  The court concluded that a nearly 52% reduction of the defendant's sentence was

inconsistent with the § 3553(a) factors.  So, too, here.  Nor does Ms. Edwards's culpability compare favorably with Mr. Cambiano's.  Reducing Ms. Edwards's sentence by over 50% is inconsistent with Congress's mandate as expressed in § 3553(a).

In *Carter*, the court had sentenced the defendant to 120 months' imprisonment after Mr. Carter pleaded guilty to possession with intent to distribute and dispense 50 grams or more of actual methamphetamine.  2021 WL 4892967, at *1.  The defendant moved for a sentencing modification.  *Id.*  When the court ruled, Mr. Carter's projected release date was over four years away.  *Id.*  The court assumed defendant's combination of medical conditions—"mal-rotated intestine, Colonic Diverticulosis, Dependent Atelectasis, and various mental health issues"— satisfied the first prong of the test.  *Id.* at *2.  Still, the court denied Mr. Carter's motion, holding that releasing the defendant "would no longer reflect the seriousness of his offense." *Id.* at *3.

Here, the case against Ms. Edwards's release is stronger than in *Cambiano* or *Carter*. That's because Ms. Edwards—unlike Mr. Cambiano or Mr. Carter—pleaded guilty to a crime involving the death of a person.  And Ms. Edwards's requested reduction—about 13 years—is of significantly greater length than the reduction requested by Mr. Cambiano or Mr. Carter.  So instead of supporting Ms. Edwards's position, these cases bolster the court's conclusion that it should deny Ms. Edwards's motion.

### 2.   Cases from Other Courts

Ms. Edwards cites a couple of cases to support her proposition that the halfway point of a sentence is a key benchmark.  Doc. 523 at 31 (first citing *United States v. Benjamin*, No. CR-10-131, 2021 WL 308228, at *4 (E.D. Pa. Jan. 29, 2021); then citing *United States v. Kilgo*, 650 F. Supp. 3d 586, 589 (S.D. Ohio 2023)).  Of course, the proportion of a sentence served is a relevant consideration.  *See, e.g.*, *Cambiano*, 2021 WL 2666776, at *4 ("Mr. Cambino requests a nearly 52% reduction of his sentence.  A reduction of this magnitude would not satisfy these five

[§ 3553(a)] sub-factors relative to the seriousness of Mr. Cambiano's crimes."); *United States v. Lytle*, No. 17-CR-50020-RAL, 2023 WL 2387929, at *1 (D.S.D. Mar. 7, 2023) (denying compassionate release motion where defendant had served only 38.3% of term but leaving open reconsideration after defendant had served at least half of his sentence), *aff'd*, (8th Cir. Apr. 24, 2023). But proportion alone is a crude metric. *First*, proportion alone ignores the sentence's duration. That is, releasing a defendant who has served half of a 50-year sentence differs meaningfully from releasing a defendant who has served half of a five-year sentence. And the magnitude of sentence reduction is a relevant consideration for the § 3553(a) factors. *United States v. Pawlowski*, 967 F.3d 327, 330–31 (3d Cir. 2020) (collecting cases where courts have taken into account the amount of remaining time on an inmate's sentence when evaluating compassionate release motions). *Second*, considering the proportion of the sentence served—in isolation—ignores the other relevant statutory factors. *See* 18 U.S.C. § 3553(a).

It almost goes without saying that sentencing—and compassionate release decisions—require "fact-intensive" inquiries. *United States v. MacCallum*, 511 F. Supp. 3d 419, 425 (W.D.N.Y. 2021). So, it doesn't follow that a large sentence reduction in one case warrants a large sentence reduction in *this* case. Still, the court pauses long enough to explain why the cases Ms. Edwards cites—and a couple other cases where courts granted significant sentence reductions—are different than Ms. Edwards's case.

Start with *Benjamin*. 2021 WL 308288. There, the Eastern District of Pennsylvania granted the defendant's motion for compassionate release after he had served just over half of his 240-month sentence for several crimes including possession with intent to distribute cocaine base and marijuana and being a felon in possession of a firearm. *Id.* at *1. To be sure, *Benjamin* is helpful to Ms. Edwards's position. But, there, the defendant's crimes didn't directly cause a

person's death.  And that was significant to the court's decision to grant the defendant's motion.
*See id.* at *4 ("The crimes which landed [defendant] in prison were not violent[.]").  What's
more, based on the court's survey of compassionate release cases, the significant sentence
reduction in *Benjamin* is an outlier among compassionate release decisions.  *E.g.*, *Johnson*, 2021
WL 1222234, at *3 (concluding § 3553(a) weighed against release where defendant had "served
only a little more than half" of 300-month sentence); *United States v. Mustafa*, No. CR 14-261
(JRT/ECW), 2023 WL 4936211, at *1–2 (D. Minn. Aug. 2, 2023) (denying compassionate
release motion after defendant served over half of 130-month sentence because it would
"minimize the seriousness of his crime and create sentence disparities"); *Carter*, 2021 WL
4892967, at *1, *3 (denying compassionate release motion where defendant was more than four
years from projected release on 120-month sentence because reduction "would no longer reflect
the seriousness of his offense").  So, though *Benjamin* is helpful to Ms. Edwards, it doesn't
persuade the court.

Kilgo is easier to distinguish.  650 F. Supp. 3d 586.  There, the defendant was serving a
two-year sentence.  *Id.* at 588.  And the court granted release after the defendant had served more
than a year.  *Id.* 589.  So the court effectively reduced the defendant's sentence by less than a
year.  *Id.*  Here, in contrast, Ms. Edwards seeks a sentence reduction that is at least eightfold the
sentence reduction in *Kilgo*.  *Kilgo* doesn't persuade the court.

The court's research revealed two cases within our Circuit where courts granted
significant sentence reductions.  So, the court explains why these cases, too, differ from Ms.
Edwards's.

The first is *Maumau*.  993 F.3d 821.  There, our Circuit affirmed the district court's
decision granting a motion for compassionate release after the defendant had served about a

decade of a 55-year sentence. *Id.* at 824, 826, 828. Understanding *Maumau* requires some context. "At the time of Maumau's sentencing, 18 U.S.C. § 924(c)(1)(C) required the imposition of a 25-year mandatory minimum consecutive sentence for 'a second or subsequent conviction under § 924(c),' even if the second and subsequent convictions were part of the same prosecution as the first such conviction." *Id.* at 826 (quotation cleaned up) (quoting 18 U.S.C. § 924(c)(1)(C) (2011)). So, when a jury convicted Mr. Maumau of "three counts of using a gun during a crime of violence"—among other charges—then-existing law required the district court to impose a gargantuan sentence. *Id.* at 824. But in 2018, "Congress enacted the First Step Act[,]" which "amended § 924(c) so that the twenty-five-year mandatory minimum sentence for a second or subsequent conviction of § 924(c) applies only if the defendant's first conviction is final at the time of the second or subsequent § 924(c) conviction." *Id.* This intervening change of law was central to the district court's disposition. *See id.* at 828. The district court cited "the fact that [the defendant] would not receive the same sentence if the crime occurred today" and that "no one was injured during his crimes." *Id.* at 828, 829 (quotation cleaned up).

Again, *Maumau* is different than Ms. Edwards's case. For starters, unlike in *Maumau*, no intervening change in the law has occurred since the court sentenced Ms. Edwards. Were Ms. Edwards sentenced today, the guidelines still would recommend life. What's more, no one was harmed in *Maumau*. *Id.* at 829. Here, in contrast, a man died because of Ms. Edwards's offense. Two more aspects of *Maumau* set it apart from this case. One, the government had previously offered the defendant a plea deal of just 10 years before trial. *Id.* at 838 (Tymkovich, J., concurring). Then, at sentencing the court imposed a 55-year term of incarceration. *Id.* at 824 (majority opinion). Here, Ms. Edwards faced life imprisonment, and her plea to 25 years allowed her to avoid that worst outcome. Two, Mr. Maumau's sentenced was "extraordinarily

long[,]" "especially in comparison to the significantly shorter sentences Maumau's co-defendants received for substantially similar conduct[.]" *Id.* at 838 (Tymkovich, J., concurring). Here, as discussed above, one of Ms. Edwards's codefendants—who, by all accounts, is less culpable than Ms. Edwards—is still incarcerated. So *Maumau* is one of the "relatively rare" cases where a court grants compassionate release, *see id.*, but it still doesn't move the needle for Ms. Edwards.

*United States v. Tuakalau* is similar to *Maumau.*  598 F. Supp. 3d 1222 (D. Utah 2022). There, the district court granted the defendant's motion for compassionate release after he had served 14 years of a 30-year sentence. *Id.* at 1224.  Significant to the court's disposition—and absent here—were intervening changes in the law between the defendant's sentencing and motion for compassionate release. *Id.* at 1225.  While the defendant accepted a plea deal to 30 years—and thus wasn't subjected directly to § 924(c)'s mandatory stacking provision—the court explained that the plea deal arose only against the backdrop of a massive possible sentence.  "Mr. Tuakalau took a plea with a stipulated 30-year sentence to avoid a possible 185-year stacked sentence if convicted on all counts.  He made his Hobson's choice—to take the deal—against the backdrop of § 924(c) sentence stacking." *Id.* at 1225.  So, *Tuakalau* likewise involved an intervening change of law, which is missing here.

In short, other cases can inform—but only to a limited extent—how the court should decide this highly fact-specific motion.  Other courts have granted significant sentence reductions.  But those cases differ from this one in meaningful ways.  And so, they don't persuade the court that it has authority to grant Ms. Edwards relief on her motion.

## IV.      Conclusion

Ms. Edwards presents a compelling case for release.  She is suffering in a federal prison. And Ms. Edwards is unlikely to reoffend or pose any danger outside of prison.  The court's

decision here is a close call.  Had Ms. Edwards served more of her sentence, the court's conclusion might well differ.  And yet, the court can't say how much more because of the balancing analysis this kind of motion requires.

The sad reality of this case is this:  Ms. Edwards committed a serious felony that caused a man to die, and she engaged in this lethal conduct at the relatively old age of 57.  The sentencing guideline range for Ms. Edwards's offense was life.  The court accepted a binding plea agreement and sentenced Ms. Edwards to serve a shorter sentence—25 years of incarceration.  To release Ms. Edwards after she has served less than half of her sentence term would not "reflect the seriousness of the offense" that she committed.  *See* 18 U.S.C. § 3553(a)(2)(A).  Bound by Congress's command to weigh the § 3553(a) factors, the court concludes, albeit reluctantly, that it should deny Ms. Edwards's motion.

Finally, the Bureau of Prisons would do well to review how it has treated Ms. Edwards, as an aging offender in poor health.  The government didn't contest her account of her treatment—medical and otherwise.  It's not our government's finest hour.  The court is mindful that the Executive Branch has custody of this offender—not the Judiciary.  But the court properly can consider the Bureau's treatment of Ms. Edwards in its evaluation of the extraordinary and compelling reasons.  *Beck*, 425 F. Supp. 3d at 588 (concluding that defendant's "invasive cancer and the abysmal health care BoP has provided qualify as 'extraordinary and compelling reasons' warranting a reduction in her sentence").

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant Connie Edwards's Motion to Reduce Sentence (Doc. 523) is denied.

**IT IS SO ORDERED.**

25

Dated this 8th day of October, 2024, at Kansas City, Kansas.

<u>s/ Daniel D. Crabtree</u>
Daniel D. Crabtree
United States District Judge