# UNITED STATES DISTRICT COURT

## District of Kansas

(Kansas City Docket)

UNITED STATES OF AMERICA,

Plaintiff,

v. CASE NO. 2:12-cr-20015-DDC

CONNIE EDWARDS,

Defendant.

GOVERNMENT'S RESPONSE TO DEFENDANT'S THIRD MOTION FOR COMPASSIONATE RELEASE (Doc. 535)

APPEAR NOW the United States of America, by and through Jared S. Maag, Assistant United States Attorney, and respectfully submit the following in response to the defendant's third motion for compassionate release (Doc. 535).

I. PROCEDURAL HISTORY

On November 21, 2012, the defendant, pursuant to Fed. R. Crim. P. 11(c)(1)(C), entered a guilty plea to Count One of the Third Superseding Indictment, (Doc. 159), charging a violation of 21 U.S.C. §§ 841 and 846, namely, conspiracy to possess with the intent to distribute a mixture and substance containing hydrocodone, methadone,

morphine, and methamphetamine, with death and serious bodily injury resulting from the use of such controlled substances. (Doc. 207.) As an appropriate disposition of the case, the parties recommended that the defendant be sentenced to a controlling term of 300 months' imprisonment (25 years). (*Id*. at 10, ¶ 3.)

On March 4, 2013, this Court (Murguia, J.) accepted the parties' agreement and the defendant was committed to the custody of the United States Bureau of Prisons (BOP) for 300 months. (Doc. 267.)

On June 29, 2020, the defendant filed her first motion pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) seeking compassionate release on grounds that COVID-19 had a signifiant impact on her overall health. (Doc. 470.)

On September 29, 2020, this Court issued a Memorandum and Order denying the defendant relief, finding that she failed to establish "extraordinary and compelling" reasons warranting compassionate release and that "the pertinent sentencing factors in [Section] 3553(a) d[id] not favor the reduction [her] motion s[ought]." (Doc. 482 at 7-10.)

On October 4, 2021, the United States Court of Appeals for the Tenth Circuit affirmed this Court's Order denying compassionate release. (Doc. 492.)

On August 2, 2023, the defendant filed her second motion for compassionate release. (Doc. 523.) There, she maintained release was necessary because she had served one-half of her sentence, was over 70 years of age, that her health was greatly deteriorating, and that BOP was not providing her adequate care. (*Id*. at 1.)

On October 9, 2024, this Court again denied the defendant relief. (Doc. 531.) In its

Order, this Court found that while the defendant's circumstances were tragic, she failed to qualify for release after balancing the factors under 18 U.S.C. § 3553(a). (*Id*. at 18.)[1] The defendant did not appeal that decision.

On October 8, 2026, the defendant (through counsel) filed her third motion seeking compassionate release. (Doc. 535.)

II. DEFENDANT'S ARGUMENT

In her current motion, the defendant largely resurrects previous arguments, namely, that she is now 74 years of age, that her health continues to deteriorate, and that the BOP still fails to provide her with adequate medical care. (*Id*. at 1.) She further maintains that the recent release of her co-defendant, Tamara Ledom, warrants her immediate release. (*Id*.)

III. ARGUMENT

A. Exhaustion

As a general matter, federal courts are prohibited from modifying a defendant's term of imprisonment once it has been imposed; yet this rule is subject to a limited number of narrow exceptions. *Freeman v. United States*, 564 U.S. 522, 526 (2011). Section 3582(c)(1)(A) qualifies as one of those exceptions and provides that a district court is authorized to grant a motion for reduction of sentence whether filed by the Director of the BOP or upon motion of the defendant "after the defendant has fully exhausted all

[1] This Court also denied the defendant's motion for reconsideration on grounds that it was untimely filed. (Doc. 534.)

administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

Records provided to the government show that the defendant's request for compassionate release was filed with the Warden at FMC Carswell on June 18, 2026, and thereafter denied on August 24, 2026. The government therefore concedes that the defendant has properly exhausted her administrative remedies. *United States v. Hemmelgarn*, 15 F.4th 1027, 1030-31 (10th Cir. 2021) (holding that Section 3582(c)(1)(A)'s exhaustion requirement is a claim-processing rule, and that the defendant must demonstrate proof of exhaustion).

B. <u>Review Standard</u>

A district court may grant a motion for compassionate release only if the following three requirements are met: (1) there are extraordinary and compelling reasons that support the requested sentence reduction; (2) the reduction is consistent with the applicable policy statements issued by the United States Sentencing Commission; and (3) the district court considers the factors set forth in 18 U.S.C. § 3553(a). 18 U.S.C. § 3582(c)(1)(A). A district court may deny compassionate release when any of the three prerequisites listed in Section 3582(c)(1)(A) is lacking and need not address the other factors. *United States v. Hald, et. al,* 8 F.4th 932, 942 (10th Cir. 2021) (reaffirming that the three steps could be considered in any order). Conversely, when a district court determines that compassionate release *is* warranted, "it must of course address all three steps." *United States v. McGee,* 992 F.3d

1035, 1043 (10th Cir. 2021) (quoting *United States v. Navarro*, 986 F.3d 668, 670 (6th Cir. 2021)).

Importantly, Section 3582(c)(1)(A) itself requires that the reasons for release be "extraordinary and compelling;" in other words, "reasons that are especially unusual and convincing." *Rutherford v. United States*, 146 S.Ct. 1320, 1330 (2026); *Fernandez v. United States*, 146 S.Ct. 1292, 1302 (2026) (noting that "[w]hile Congress has not defined the 'extraordinary and compelling reasons' that may warrant a reduced sentence, these criteria are not empty vessels"); *cf. Hald*, 8 F.4th at 938 n.4 ("The design of Congress in amending [Section] 3582(c)(1)(A) was not to create an open season for resentencing, after all, the title of the amendment speaks in terms of 'compassionate' release . . .").[2] To be sure, the "heartland" of compassionate release has long been defined as a prisoner's "personal circumstances," often applied in cases where the prisoner is terminally ill. *Rutherford*, 146 S.Ct. at 1331.

Section 3582(c)(1)(A)(i) also provides that this Court "*may reduce*" the defendant's sentence. The "use of 'may' is quintessential discretionary language." *United States v. Sutton*, 962 F.3d 979, 986 (7th Cir. 2020); *United States v. Ruffin*, 978 F.3d 1000, 1005 (6th Cir. 2020) ("This last requirement confirms an overarching point: The district court has substantial discretion. The statute says that the district court "may" reduce a sentence

[2] As the majority further noted in *Rutherford*, "[w]hile the terms 'extraordinary' and 'compelling' leave room for judgment, they are not so flexible as to encompass any consideration." 146 S.Ct. at 1332.

if it finds the first two requirements met; it does not say that the district court *must* do so. Even if those conditions are met, therefore, a district court may still deny relief if it finds that the "applicable" [Section] 3553(a) factors do not justify it.") (internal citations omitted).

Section 3582(c)(1)(A)(i) reads in relevant part that "[a] court may not modify a term of imprisonment once it has been imposed except that—in any case—the court . . . may reduce a term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—(i) extraordinary and compelling reasons warrant such a reduction; and that such reduction is consistent with applicable policy statements issued by the Sentencing Commission." Congress has thus plainly established that a district court considering a motion for compassionate release find that any approved reduction be "consistent with applicable policy statements issued by the Sentencing Commission." *Id*.

To that end, under Section 1B1.13 of the Guidelines, this Court is directed to consider if the medical circumstances of the defendant, the age of the defendant, her family circumstances, whether the defendant is or has been a victim of abuse, or is serving an unusually long sentence, constitute extraordinary circumstances warranting a sentence reduction. *See* U.S.S.G. § 1B1.13(b)(1)-(4), (6). Section 1B1.13 also permits this Court to consider whether "[t]he defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons

described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4).

Finally, the policy statement reaffirms this Court's obligation to analyze the factors under Section 3553(a), namely, "the nature and circumstances of the offense"; "the history and characteristics of the defendant"; "the need to avoid unwarranted sentence disparities"; and the need for the sentence to "provide just punishment," "afford adequate deterrence," "protect the public," and "provide the defendant with ... training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a); U.S.S.G. § 1B1.13(a).

C. Defendant's Medical Circumstances

Once again, the defendant moves this Court to grant her compassionate release as her health continues to deteriorate because of the natural aging process, and personnel at FMC Carswell have allegedly failed to provide her with adequate medical care. (Doc. 535 at 1; at 4-5; at 8-17.)

Relevant here, under Section 1B1.13(b)(1)(A)-(C), extraordinary and compelling reasons exist if (A) the defendant is suffering from a terminal illness, (B) the defendant is suffering from a serious physical or medical condition, serious functional or cognitive impairment, or deteriorating physical or mental health because of the aging process, that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he is not expected to recover," or (C) the defendant "is suffering from a medical condition that requires long-term or

specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death."

Having reviewed the defendant's medical records provided by the BOP, (attached as Gov't Ex. A), Section A of 1B1.13(b)(1) does not apply. Accordingly, the defendant invokes only Sections B and C of 1B1.13(b)(1). (Doc. 535 at 8; at 12.) The defendant also employs Section 1B1.13(b)(2) as a means for compassionate release. (*Id*. at 8.)

Section 1B1.13(b)(1)(B)(iii) requires the defendant to demonstrate that she is "experiencing deteriorating physical or mental health because of the aging process . . . that substantially diminishes [her] ability to provide self-care within the environment of a correctional facility and from which . . . she is not expected to recover." Similarly, Section 1B1.13(b)(1)(C) requires the defendant to show that she is "suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." Finally, Section 1B1.13(b)(2) is implicated when a defendant is at least 65 years of age, experiencing serious deterioration in physical or mental health because of the aging process, and has served at least 10 years of imprisonment.

The defendant is 74 years old and has served more than ten years of her sentence. The government does not dispute that the physical decline in her health is due in part to the aging process. Her current medical records show that she is a chronic care inmate classified

as a medical care level 3.[3]

The defendant currently weighs 239 pounds, stands 5'3" and has a body mass index (BMI) of 43.3, placing her in a class 3 obesity level.[4] (Gov't Ex. A at 11.)[5] She is currently taking tirzepatide (Mounjaro), a prescription injectable medication to help reduce her weight. (*Id*. at 3.) Apart from her severe obesity, the defendant has been diagnosed with the following: atrial fibrillation, benign neoplasm of unspecified breast, chronic ischemic heart disease, hypothyroidism, major depressive disorder, malignant neoplasm of the colon, malignant neoplasm of the female breast, type 2 diabetes mellitus, urinary incontinence, Vitamin B deficiency, atherosclerosis coronary of the native coronary artery, chronic pain syndrome, COPD, esophageal reflux, hypertension, nerve pain, obstructive sleep apnea, osteoarthrosis, osteoporosis, and restless leg syndrome. (*Id*.) For these chronic ailments, the defendant is prescribed several medications. (*Id*. at 3-4.) She is also wheelchair bound and appears able to move without serious concern or distress. (*Id*. at 10.)

The government does not contest that the defendant has significant health issues.

---

[3] Care Level 3 inmates are outpatients who have complex and usually chronic medical or mental health conditions requiring frequent clinical contacts to maintain control or stability of their condition. *United States v. Pimentel-Garcia*, No. 4:07-cr-00088-BLW, 2022 WL 4941178, at *5 (D. Idaho Oct. 4, 2022) (citing BOP care level classification guide).

[4] Individuals with a BMI greater than 40 are classified as Class 3 obesity, the most severe category of obesity. *See* https://scienceinsights.org/what-is-class-3-obesity-bmi-risks-and-treatment/ (last visited 20 October 2026)

5 Government Exhibit A is the most current medical records provided by the BOP. The government cites the relevant pdf page number when appropriate.

Her medical problems are fully demonstrated by her BOP classification of Medical Care Level 3. (*Id*. at 1.) The government does challenge, however, the assertion that BOP is failing to address these issues in a manner that warrants her immediate release.[6]

To begin with, the BOP "need not provide 'optimal medical care or the care of an inmate's choosing.'" *United States v. Bailey*, No. 19-391 (JDB), 2025 WL 1114185, at *7 (D.D.C. Apr. 15, 2025) (quoting *United States v. Edwards*, Crim. A No. 3-234 (JDB), 2022 WL 2866703, at *4 (D.D.C. July 21, 2022)); *United States v. Belin*, No. 10-CR-2213 MV, 2023 WL 3867751, at *4 (D.N.M. June 7, 2023) (noting that while the Eight Amendment guarantees inmates the right to adequate medical care, it does not require the BOP to provide optimal medical care or the care of an inmates choosing). Only when the BOP provides untimely and inadequate care can extraordinary and compelling reasons exist warranting consideration of compassionate release. *United States v. Stottlar*, 834 F.Supp.3d 214, 222-23 (D.N.H. 2026); *Belin*, 2023 WL 3867751, at 4 (citing cases). That, however, is not this case.

The defendant's primary health concern is her weight, which has fluctuated

---

[6] The government concurs with this Court's previous statement that a *Bivens* action is "a more suitable remedy" when challenging the care provided by the BOP. (Doc. 531 at 12 n.5); *see also United States v. Gonzales*, 547 F.Supp.3d 1083, 1118 (D.N.M. 2021) ("*Bivens* actions are a more suitable remedy to problems with prison medical care, rather than compassionate release motions."); *United States v. Wagner*, No. 4:18-cr-155-SDJ, 2023 WL 5337829, at *11 n. 12 (E.D. Tex. Aug. 18, 2023) (challenges to medical care within BOP are not appropriate in a compassionate release motion but rather should be raised in a habeas petition or *Bivens* action); *United States v. Preston*, No. 4:21-cr-00015, 2025 2997529, at *4 (W.D. Va. Oct. 24, 2025) ("Claims that the Bureau of Prisons or its medical personnel are providing grossly inadequate medical care may have a remedy in an appropriate civil action, such as a Federal Tort Claims Act lawsuit or a *Bivens* action.").

dramatically over the past 2 years. (Gov't Ex. A at 11.) Personnel at FMC Carswell have worked with the defendant to reduce her weight to a manageable level, (*id*. at 11-12), but it is ultimately the defendant's responsibility to follow the plan as prescribed. Until the defendant can get her weight under control, her concurrent medical problems will arguably get worse.

The current medical records provided by the BOP, however, do not show the dire circumstances the defendant suggests in terms of her treatment. The chronic care meeting on October 5, 2026, provides a good overview of her medical situation and the steps taken to address her medical problems. (*Id*. at 1-2.) The records further demonstrate that the defendant is seen regularly by medical personnel and the more serious issues are being handled. (*Id*. at 19 (oncology matters).)

The government is in no way attempting to minimize the defendant's health problems. She is clearly suffering from several issues that have an impact on her overall health. The central question, however, is whether she can no longer provide self-care within FMC Carswell because of her deteriorating health *and* from which she is not expected to recover. U.S.S.G. § 1B1.13(b)(1)(B)(iii). The records simply don't bear that out.

Whether the defendant can satisfy Section 1B1.13(b)(2) is understandably a different question. *See, e.g., United States v. Gigliotti*, --- F.Supp.3d ---, 2026 WL 2517179, at *4 n.6 (E.D.N.Y. Aug. 26, 2026). The defendant is 74 years of age and has served more

than 10 years of her 30-year sentence.[7] Whether she is experiencing serious deterioration in her physical health is therefore the relevant question. Again, the defendant's medical record speaks for itself in terms of what her current state is, which is not as ominous as she makes out in her motion. Again, the government is not suggesting that the defendant's health is superior. It is not. But she can provide self-care and the BOP is providing the medical assistance she needs.

A final word of note on this first issue. The government appreciates the Court's concerns from its previous Order (Doc. 531.) We understand that the Court will very likely again find that the defendant satisfies the policy statements under Section 1B1.13(b) establishing extraordinary and compelling reasons for consideration of compassionate release. (*Id*. at 10-11.) And though the defendant has arguably met the requirements on this first factor for consideration of release, it must be noted that at some level the defendant herself must take the necessary steps to better her health, and the records do not suggest that she is taking the appropriate steps towards a healthier lifestyle that will undoubtedly help mitigate her related health problems. (Gov't Ex. A at 11-12.)

D. Section 3553(a)

Finally, to the extent the defendant can establish an extraordinary and compelling reason for release, satisfying that burden does not resolve her entitlement to a reduction in

[7] Records provided by the BOP show that the defendant has served 14 years and 26 days of her 30-year sentence as of the date of this pleading. She will be considered for release to home confinement on May 27, 2029, because as an elderly inmate, she will have served two-thirds of her term of imprisonment by that date.

sentence or release from confinement. This Court must still consider whether she poses a danger to the community and other relevant factors under Section 3553(a) before making the ultimate decision on release. Accordingly, this Court must consider (1) the defendant's personal history and characteristics; (2) her sentence relative to the nature and seriousness of her offense; (3) the need for a sentence to provide just punishment, promote respect for the law, reflect the seriousness of the offense, deter crime, and protect the public; (4) the need for rehabilitative services; (5) the applicable guideline sentence; and (6) the need to avoid unwarranted sentencing disparities among similarly-situated defendants. *See* 18 U.S.C. § 3553(a)(1)–(6).

The government is cognizant that granting compassionate release in this case rests largely, if not exclusively, on whether the factors under Section 3553(a) currently balance in the defendant's favor. This Court found just two years ago that the factors did not weigh towards release. (Doc. 531 at 25.) It should find the same again on the present motion.

This Court and the parties are fully aware of the circumstances of this case, and rehashing in granular detail the facts that led to the defendant's incarceration and 30-year sentence are unnecessary. In short, the defendant was convicted of conspiracy to distribute and possess with intent to distribute controlled substances that resulted in the death of one of her customers. (Doc. 207 at 2-10; Doc. 253 at 6-15, ¶¶ 19-72.) She contracted with the government for a controlling sentence of 30 years in the face of a life sentence, (Doc. 207), and, as of this pleading, has served approximately 56% of that sentence.

The pregnant question is whether an ailing defendant who organized a drug

trafficking scheme that resulted in the death of a known user should be given compassionate release prior to her scheduled release date. The government continues to maintain that the answer is "no."

While the defendant believes that an additional two years of incarceration and the release of a co-defendant is sufficient to satisfy the factors under Section 3553(a), she is mistaken. First, as this Court noted in its previous Order, Ms. Ledom was less culpable than the defendant. (Doc. 531 at 18.) Consequently, Ms. Ledom's release does not establish an unwarranted disparity between the two. Second, an additional two years of incarceration still puts the defendant at only 56% of her original sentence, which was, again, a negotiated agreement allowing the defendant to avoid a life sentence— an otherwise appropriate consequence.

When considered in totality, the factors under Section 3553(a) continue to balance in favor of continued incarceration. As this Court noted, the nature and circumstances of this case are tragic. (Doc. 531 at 1.) The defendant sold copious amounts of drugs to multiple users that, on one occasion, resulted in the death of William Thomas Powell. (Doc. 253 at 6, ¶ 21.) A life sentence was recommended under the Guidelines as an appropriate sentence for this type of criminal behavior. (*Id*. at 24, ¶ 122.) Again, as of this pleading, the defendant will have served only 14 years and 26 days of a 30-year sentence. Her immediate release will not reflect the seriousness of the offense or promote respect for the law. A just punishment must continue to be imposed in this case, and a 44% reduction in the defendant's sentence falls far afield of that congressional mandate.

The government is mindful that this Court's decision on whether compassionate release is appropriate is excruciatingly difficult. The defendant is aging, in ill health, but committed an offense that resulted in the death of another human being. Under the weight of that decision, however, the government still maintains that the 30-year sentence imposed in this case plainly reflects the seriousness of the offense, promotes respect for the law, and provides just punishment. That the defendant should only serve approximately one-half of that sentence runs counter to the factors under Section 3553(a).[8]

## IV. CONCLUSION

For the foregoing reasons, the government respectfully moves this Court to once again reject the defendant's arguments and deny her compassionate release.

[8] Candidly, the government will not attempt to suggest that the defendant must remain incarcerated to protect the public from further crimes or that she is a danger to the community. But the factors under Section 3553(a) must be weighed accordingly, and on balance they do not favor her release. *Cf. United States v. Clark*, 434 F.3d 684, 689 (4th Cir. 2006) (Motz, J. concurring) ("Application of the § 3553(a) factors is neither a mechanical nor an automatic process—some factors may weigh more heavily than others depending on the facts of an individual case.").

Respectfully submitted,

RYAN A. KRIEGSHAUSER
United States Attorney
District of Kansas

By: /s/ Jared S. Maag
JARED S. MAAG, Ks. Bar. No. 17222
Assistant United States Attorney
290 Carlson Federal Bldg.
444 SE Quincy St.
Topeka, KS 66683
Ph: 785.295.2850 (Office)
Fax: 785.295.2853
jared.maag@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on this 21st day of October 2026, I electronically filed the foregoing Response with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to those attorneys who have entered their appearance in the matter, to include:

William Dunn
Counsel for Defendant
billdunnlawyer@gmail.com

By: /s/ Jared S. Maag
JARED S. MAAG, Ks. Bar. No. 17222
Assistant United States Attorney